IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TOSHIBA CORPORATION,

                              Plaintiff,                    ORDER

        v.
                                                            09-cv-305-slc
IMATION CORP., *et al.*,

                              Defendants.

---

ORDER RE:  MOTIONS IN *LIMINE*

---

       This patent infringement lawsuit is set for trial on April 8, 2013, following remand from

the Court of Appeals for the Federal Circuit.  The parties are well-acquainted with the facts and

procedural history of this case.  This order addresses and rules on the parties' motions *in limine*

(PML for plaintiff, DML for defendants).


## PLAINTIFF'S MOTIONS

**PML 1 and 2: Exclude evidence related to "usefulness" (dkts. 335 and 336)**

       In PML 1, Toshiba seeks to prevent defendants' experts, Dr. Immink and Dr.

Mansuripur, from relying on or offering their damages opinions related to non-infringing

alternatives and the alleged value of the claimed inventions during the liability phase of trial.

In his July 28, 2010 non-infringement rebuttal report, Dr. Mansuripur opined that the "lead-out

area is not necessary for the operation of the discs."  Dkt. 172, Exh. 1 at ¶ 148.  Later, in his

November 8, 2010 damages report, he explained that "[t]he accused DVDs can be used without

the claimed lead-out area and still provide all of the benefits of DVD technology.  Using discs

without the claimed lead-out area is a non-infringing alternative. . ."  Dkt. 271, Exh. 4 at ¶ 23.

In his December 7, 2012 supplemental rebuttal report, Dr. Mansuripur argued that the test pattern claimed in the '751 patent was unnecessary given EFMPlus modulation and that DVD drives do not use the test pattern for playback.  Dkt. 331 at ¶¶ 129-133.  He also opined in that report that the '966 patent had no value with respect to the accused single layer discs.  *Id.* at 143.   In a November 17, 2010 damages report, Dr. Immink opined that the claimed test pattern in the '751 pattern was dispensable.  Dkt. 271, Exh. 1 at ¶ 23-25.  He also stated that the two identifiers disclosed in Claim 1 of the '966 patent could be replaced by one identifier and that the invention in Claim 1 was not necessary for recording and reproducing data from the accused discs.  *Id.* at ¶¶ 12-14.

Although Toshiba claims that both experts introduced their opinions for the first time in a later-filed damages report or a supplemental report, Toshiba does not seek to preclude the allegedly "new" opinions as untimely filed under Fed. R. Civ. P. 26.[1]  Instead, Toshiba argues that the opinions are irrelevant under Fed. R. Evid. 402 and would result in undue prejudice under Rule 403.  Devoting only one paragraph to its argument, Toshiba cursorily states that the existence of non-infringing alternatives is irrelevant because defendants have no evidence that they redesigned their products to include those alternatives, and that the value or usefulness of the patents is irrelevant to the issue of liability and may improperly cause the jury to consider it in assessing infringement.

---

[1] I note that for the reasons stated in defendants' response brief, it appears that both experts adequately set forth the basis for the opinions in their damages reports in a timely manner.  *See* dkt. 361 at 2-6.  Dr. Mansuripur's opinion about non-infringing alternatives and the usefulness of the test pattern and Dr. Immink's opinion about the test pattern being unnecessary were foreseeable from their earlier reports on non-infringement or invalidity.  Further, Toshiba had the opportunity to depose both experts about their damages opinions, thereby reducing the risk of prejudice to Toshiba.

Defendants respond that their experts' challenged opinions are related to the lack of utility and value of the patents and defendants assert that these opinions are relevant not only to the issue of damages but also to the determinations of induced infringement and invalidity.[2]

The parties more clearly frame the dispute in their briefing of PML 2, in which Toshiba asks the court to bar defendants from introducing evidence relating to the alleged use or lack of use of the '751 patent test pattern during the liability phase of trial on the grounds that it is irrelevant and will cause undue prejudice.  Toshiba argues that evidence as to whether a DVD drive or player uses the test pattern during playback is irrelevant to the question of whether defendants intended to encourage end users to infringe the '751 patent.  Defendants respond that evidence that the test pattern is not used and therefore of insignificant value helps explain why the defendants did not know about the claimed test pattern before this lawsuit and also refutes Toshiba's claims that the defendants intended to encourage infringement.  Defendants reason that it would not make sense for them to encourage end users to write a test pattern that was not used or even necessary for compatibility with other devices.  Defendants also argue that this evidence is relevant to the invalidity analysis because it rebuts Toshiba's allegation that the technology claimed in the '751 patent was commercially successful, a secondary consideration of obviousness.

I am not persuaded that evidence from the defendants that the test pattern serves no function in the accused DVDs, or of existing alternatives to it is relevant to the dispute over defendants' *mens rea* in allegedly inducing infringement of the '751 patent.  The inferences that

---

[2] It appears from defendants' response to PML 1 that utility or value of the patent will be relevant to induced infringement and obviousness of the '751 patent but only to obviousness of the '966 patent.  Defendants also only discuss evidence of non-infringing alternatives as it relates to utility of the '751 patent.

can be drawn from this evidence are unrelated to what Toshiba must show to establish induced infringement.  To be liable for induced infringement, defendants must have knowledge that the induced acts—here, the writing of the test pattern—constituted patent infringement.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, __ U.S. __, 131 S. Ct. 2060, 2068 (2011).  Defendants assert that they had no knowledge of the claimed test pattern prior to this lawsuit.  In an effort to refute this assertion, Toshiba intends to present the expert opinion of Dr. Hesselink, who opines that defendants should have known about the claimed test pattern, given existing DVD standards.  *See* discussion of Defendants' Daubert Motion to Exclude Certain Dr. Hesselink Opinions, dkt. 353.

Defendants' assertion that the test pattern has no use in the accused DVDs is irrelevant to the disclosures in the '751 patent or defendants' knowledge–or lack of knowledge–of these disclosures.  Claim 1 of the patent only requires that the test pattern exist; it does not require that DVD drives or players be able to use the test pattern during playback.  Whether defendants had an incentive or motive to encourage users to write a test pattern that was used during playback is irrelevant; they merely needed the intent to cause the end users to create DVDs with the claimed test pattern, regardless of whether it was ever used during playback.  This is all the more true when defendants contend that they didn't even know about the test pattern: although parties may argue in the alternative, allowing evidence of the usefulness of the test pattern with respect to induced infringement would confuse or mislead the jury on this point.

Defendants also argue that evidence that a patented feature—in this case, the test pattern–was either not successful or not causally connected to the success of the device rebuts the secondary consideration of commercial success in the analysis of obviousness.  I agree that

if defendants establish prima facie obviousness of the '751 patent and Toshiba introduces evidence of commercial success as rebuttal evidence, then the usefulness of the claimed test pattern would be relevant and admissible for this purpose.  If we get to that juncture, the court will allow the parties to suggest an appropriate limiting instruction.

Accordingly,

1) PML 1 is GRANTED IN PART to the extent that Toshiba seeks to preclude defendants from introducing the opinions identified in Mansuripur's damages and supplemental reports and Immink's damages report in defense to allegations of induced infringement of the '751 patent, but DENIED IN PART with respect to these opinions being introduced to rebut the secondary consideration of commercial success in the obviousness analysis of the patents-in-suit.

2) PML 2 is GRANTED IN PART with respect to defendants presenting evidence regarding the alleged non-use by DVD drives of the test pattern or other features of the '751 patent in defense to allegations of induced infringement of the '751 patent, but DENIED IN PART with respect to this evidence being presented to rebut the secondary consideration of commercial success in the obviousness analysis of the '751 patent.


**PML 3: Exclude Non-Infringement Arguments or Evidence Inconsistent with the Federal Circuit's Claim Construction for the '966 Patent (dkt.337)**

Precisely what remains for trial regarding the '966 patent has been the subject of much debate by the parties and the court during post-remand, pre-trial conferences and motion hearings.  As Toshiba points out, the Federal Circuit all but declared that defendants' accused discs satisfy the requirements of the number-of-recording planes identifying information and

recording-plane identifying information of claim 1, even without the "purpose" requirement

adopted by this court:

> We agree with Toshiba that the district court improperly read a "purpose" requirement into claim 1. The plain language of the claim requires that the number-of-recording planes identifying information " represents the number of recording planes of the recording medium." '966 patent cl.1 (emphasis added). Similarly, the claim requires that the recording-plane identifying information " uniquely identifies that recording plane." *Id*. The language of the claim only requires that the information "represents" the number of recording planes or "uniquely identifies" the recording plane. These are structural limitations. There is no dispute that the accused single-sided, single-layer DVDs have these structural elements. The district court expressly acknowledged that the accused devices did have these structural elements. *Toshiba Corp.*, No. 09–cv–305–slc, slip op. at 24 ("The fact that the bits on the accused discs happen to have the same information as they would if the standards properly distinguished two-sided discs does not establish that these bits satisfy the required claim elements."); *see also id*. at *22–23 ("Plaintiff continues to contend that defendants' single-sided, single layer discs meet the claim language because these discs indicate the total number of planes on the disc (one) and which plane is reproduced (the only one). However, as defendants point out, even though this may be literally true, it is only because plaintiff has carefully circumscribed the accused products to those where a single side of the disc is the entire disc").

> *Bits b5 and b6 on the accused DVDs accurately represent that the DVDs have one recording plane. Bit b24 on these DVDs uniquely identifies that the recording plane is the DVD's single recording plane. Appellees do not dispute the fact that these bits accurately reflect that the accused single-sided, single-layer DVDs contain one recording plane. See* Appellees' Br. 57–58.

*Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1368 (Fed. Cir. 2012) (emphasis added).

In the face of this unequivocal appellate finding, defendants have soldiered on in their

contention that the accused bits do not meet the claim limitations. Defendants argue that they

are justified in doing so because the case went up on appeal from a grant of summary judgment,

where the court was required to construe the facts in favor of Toshiba. Therefore, they say, any language in the appellate court's opinion that suggests that the accused bits infringe under the new claims construction cannot be construed as the law of the case that a jury *must* find, but only as a finding that a jury *could* make. Defendants also observe that the court did not actually grant summary judgment, but merely reversed this court's ruling and remanded the case.

At this juncture, these arguments are unpersuasive. For one thing, the appellate court could not have entered summary judgment of infringement for Toshiba, because the asserted claims have other claim elements that this court had no need to address in finding non-infringement. For another thing, the court did not use any language signaling that any triable issues of fact remained under the revised claim construction. *Cf. E-Pass Tech., Inc. v. 3Com Corp.*, (*E-Pass I*) 343 F.3d 1364, 1371 (Fed. Cir. 2003) (altering district court's claim construction and remanding case, noting that "it may or may not be that the accused Palm Pilot devices literally infringe" under new claim construction). To the contrary, the language cited above leaves no room for defendants to argue that the accused bits do not satisfy the claims under the Federal Circuit's interpretation.

The situation might be different if there was reason to think defendants had some new evidence to present regarding the operation of the accused bits that it had not presented during the initial proceeding or appeal that would show non-infringement under the new claim construction. However, it appears that the evidence defendants intend to put forth on remand is no different substantively from that which they offered in the initial summary judgment proceeding, namely, that bits b6, b5 and b24 of the accused single-sided discs do not meet the limitations of the claim terms because they only "represent" and "uniquely identify" the number

of recording planes on *one side* of the recording medium and *not on the disc as a whole*. *See* PML 3 (dkt. 337) at 3 (summarizing Mansuripur's opinions); Defs.' Response, dkt. 363, at 9. I agree with Toshiba that this argument is foreclosed.

Even if I were to give defendants the benefit of the doubt and allow them an opportunity to put in evidence that their accused products do not meet the claim limitations under the Federal Circuit's construction, I would not allow defendants to introduce arguments or evidence related to the operation of bits b6, b5 and b24 in non-accused double-sided discs. This was the primary argument advanced by defendants during summary judgment and on appeal, and the Federal Circuit flatly rejected it. *Toshiba*, 681 F.3d at 1368 ("The plain language of claim 1, which is written in terms of 'planes,' is distinct and different from the number of (or identity of) the disc sides disclosed in the specification."). As the court explained, the fact that Toshiba had carefully circumscribed the accused products to those where a single side of the disc was the entire disc was of no moment because claim 1 of the '966 patent is "broad enough to read on single-sided and double-sided discs." *Id*. at 1369. Thus, I find that under the Federal Circuit's opinion, it is the law of the case that evidence relating to the operations of bits b6, b5 and b24 in non-accused double-sided discs is irrelevant.

Accordingly, Toshiba's motion *in limine* to exclude from trial any non-infringement argument or evidence inconsistent with the Federal Circuit's claim construction for the '966 patent, including evidence relating to the operations of bits b6, b5, and b24 in non-accused double-sided discs, is GRANTED. Defendants should be prepared to report at the final pretrial conference whether they have any evidence to present at trial that survives this ruling.

**PML 4: Exclude Liesegang Testimony and Related Motion by Defendants for Summary Judgment on Exhaustion Defense (dkt. 338)**

Toshiba moves to exclude the testimony of defendants' expert, Robert Liesegang, as untimely, unreliable and improperly relating to the legal interpretation of contracts.  Toshiba argues that because all of the subjects discussed in Liesegang's report relate to defendants' affirmative defenses, the report should have been disclosed on July 7, 2010, when proponent reports were due.  At an August 18, 2010 hearing on this matter, I noted that there appeared to have been some honest misunderstandings by defendants about the meaning of "proponent" in this context and denied Toshiba's motion to strike the report without prejudice to Toshiba renewing it at a later point.  Both parties agreed to allowing Toshiba the opportunity to file a supplemental report in an effort to minimize prejudice to Toshiba.  This case has since proceeded to summary judgment, went up on appeal and been remanded for trial in this court. Given that defendants appeared to have acted in good faith and that Toshiba has not suffered any significant prejudice over the course of this litigation, I will not strike the Liesegang report as untimely.

Toshiba's arguments that Liesegang failed to explain his methodology and discounted a key contract provision do not convince me that his report must be stricken on the ground that it is unreliable.  However, I share Toshiba's concerns about the appropriateness of Liesegang's opinions concerning the licensing agreements.  I will not parse through Liesegang's report paragraph by paragraph, but as a general matter, The court will not permit Liesegang to testify on any matters, including issues of contract interpretation, that invade the province of the court or jury.  However, as defendants indicate, Liesegang's expertise may be relevant in presenting and summarizing the factual evidence and explaining licensing practices in the industry.  But all

of this discussion begs a more pivotal question: Do any defenses for which licenses may be relevant raise issues of fact for the jury's consideration?  The court's impression is that they do not.

In the summary judgment proceeding, defendants pointed to licenses by Toshiba or DVD6C that granted many of the DVD drive and recorder manufacturers that sell drives and recorders in the United States the right to use its portfolio of patents, including the patents in suit, to make, use and sell DVD drives and recorders that record and play discs.  Defendants argued that these licenses exhausted Toshiba's rights in the patent and, therefore, end users were authorized to use the licensed drives to create discs that practice the '751 patent.  Defs.' Br. in Supp. of Mot. for S.J., dkt. 139, at 36-38.  *See also* 35 U.S.C. §§ 271(a), (f), (g) (defendant can be liable for infringement only if infringing acts are carried out "without authority").  As a result, argued defendants, Toshiba could not establish the sort of direct infringement by end users that was necessary to prove Toshiba's theories of indirect infringement. *Id*.

Defendants' argument is based on the doctrine of patent exhaustion, which prohibits patent holders from selling a patented article and then invoking patent law to control post-sale use of the article.  *Excelstor Tech., Inc. v. Papst Licensing GmbH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008).  In their response to Toshiba's present motion *in limine* to exclude Liesegang's testimony, defendants renew their motion for summary judgment, asking the court to find as a matter of law that Toshiba's rights to enforce the '751 patent were exhausted upon the authorized sale of the DVD drives.

I decline to do so.  Defendants rely primarily on the Supreme Court's decision in *Quanta Computer Inc., v. LG Elec., Inc.*, 553 U.S. 617, 625, 128 S.Ct. 2109 (2008), but that decision is

not controlling.  In *Quanta*, patent holder LGE licensed a portfolio of patents to Intel, including one system and two method patents that related to a computer's memory and data usage.  The license agreement permitted Intel to manufacture and sell microprocessors and chipsets that used the LGE patents. Further, with respect to third party purchasers of Intel products, the agreement stipulated that such products would be licensed by LGE and, therefore, be noninfringing; however, the license did not extend to any product made by combining an Intel product with a non-Intel product. Quanta, aware of this stipulation, purchased microprocessors and chipsets from Intel and manufactured computers using these Intel parts in combination with non-Intel parts in ways that practiced the LGE patents. LGE filed a complaint alleging that the combinations infringed; Quanta argued that LGE's patents were exhausted upon the authorized sale of the products by Intel pursuant to its licensing agreement with Quanta.

The Court rejected LGE's argument that the sale of the products did not exhaust its patent rights because the Intel components had to be combined with other components in order to practice the methods claimed in the patents in suit, finding that "[e]verything inventive about each patent [was] embodied in the Intel Products" and "the only step necessary to practice the patent [was] the application of common processes or the addition of standard parts." 553 U.S. at 633.  In making this determination, the Court relied on its prior reasoning in *U.S. v. Univis Lens Co.*, 316 U.S. 241 (1942), which found exhaustion in part because the item sold (lens blanks) "embodie[d] essential features of [the] patented invention" whereas the finishing process required to practice the patent was a standard process barely mentioned in the patents-in-suit and thus only "incidental to the invention." 553 U.S. at 632–33 (quoting *Univis*, 316 U.S. at 250–51).  Summing up its holding, the Court wrote: "The authorized sale of an article that

substantially embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control postsale use of the article.... Intel's microprocessors and chipsets substantially embodied the LGE Patents because they had no reasonable noninfringing use and included all the inventive aspects of the patented methods." *Id*. at 638.

*Quanta* is not on all fours with this case. *Quanta* dealt with incomplete articles, and the question was whether the licensed sale of those articles exhausted the patent holder's rights. The Court found the exhaustion doctrine satisfied even by the sale of an incomplete item where the item substantially embodied the patents in suit. Here, defendants are pointing to Toshiba's licensing of one complete item (DVD disc drives) and claiming that the authorized sale of that item exhausts Toshiba's patent rights in a *different* complete item (the optical discs). I am not persuaded that the exhaustion doctrine reaches this far.

Furthermore, even if *Quanta* applies here, defendants have not met their burden of showing that the licensed *drives* substantially embody the asserted patent claims, all of which are directed to an "optical disk." *See e.g., Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1332-36 (Fed. Cir. 2006) (referring to exhaustion as an affirmative defense). Defendants' entire showing of "substantial embodiment" appears to rest solely on the fact that Toshiba's theory of infringement with respect to the '751 patent depends on the use by an end user of a DVD drive to write the claimed test pattern and lead-out area on the disc. However, "[t]he mere fact that a component is necessary to practice the patent does not mean that it reflects an inventive aspect of the patent-it must also be a unique feature of the patented system." *LG Electronics, Inc. v. Hitachi, Ltd.*, 655 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009). Defendants' perfunctory argument does not permit a finding that the licensed drives "include all the inventive aspects"

of the asserted patent claims pertaining to optical discs.  Further, defendants contend that the drives have a reasonable noninfringing use--- the creation of unfinalized DVDs.  Accordingly, I am not persuaded at this juncture that defendants have established the facts necessary to mandate a finding that Toshiba's rights in the asserted claims of the '751 patent were exhausted by the authorized sale of DVD drives.

I note that the summary judgment briefs raise the additional question whether, even assuming the drives substantially embody the patents in suit, the first sale doctrine nonetheless does not apply to the DVD6C licenses because of conditions imposed by § 2.2, which provides that the DVD writers licensed under those agreements were "for use only with DVD Read-Only Discs or DVD Recordable Discs for which royalties have been paid," and in turn that DVD Read-Only Discs or DVD Recordable Discs on which applicable royalties are paid are licensed for use only with DVD  drives for which royalties had been paid.  *Jazz Photo Corp. v. ITC*, 264 F.3d 1094, 1105 (Fed. Cir. 2001) (the "first sale" or "patent exhaustion" doctrine only applies where the first sale was "unrestricted").  Although I am inclined to agree with defendants that § 2.2 is irrelevant because it does not impose any conditions on the *sale* of licensed DVD drives, I agree with Toshiba that it is premature to rule on the scope or effect of § 2.2 until defendants have established that the licensed disc drives substantially embody the asserted claims of the patents in suit.  In any event, determining the scope of § 2.2, should the court need to do so, is a matter of contract interpretation for the court, not the jury.

In sum:

1) Toshiba's motion to bar the expert report of Robert Liesegang is DENIED with the exception that defendants may not introduce any of his opinions that invade the province of the court or jury;

2) Defendants' motion for summary judgment on its exhaustion defense is DENIED;

3) The court RESERVES RULING on the scope of § 2.2 of the DVD6C licenses; and

4) At the pretrial conference, defendants should be prepared to advise the court:

1) Whether they intend to pursue an exhaustion defense at trial;

2) If so, what evidence they intend to present;

3) Whether and to what extent any implied license defense differs from the exhaustion defense; and

4) Whether there are fact questions related to either the exhaustion or implied license defenses that a jury must decide.

## PML 5: Exclude Evidence of Affirmative Defenses (dkt. 339)

Toshiba seeks an order preventing defendants from introducing any evidence at trial that would support the affirmative defenses for which they allegedly have not produced factual support, specifically: utility, anticipation, enablement, written description, indefiniteness, implied license, prosecution history estoppel, waiver, estoppel, unclean hands and patent misuse. According to defendants, from that list they only intend to assert the defenses of anticipation of the '966 patent and implied license (but only to the extent that Toshiba seeks to prevent defendants from arguing that the sale of DVD drives and recorders exhausts Toshiba's rights to collect damages separately on DVD discs).  Defendants also wish to reserve the right to raise

indefiniteness and prosecution history estoppel as defenses in the event Toshiba is permitted to present any new claim constructions at trial.

Because defendants are not pursuing the affirmative defenses identified by Toshiba except for anticipation of the '966 patent, implied license, indefiniteness and prosecution history estoppel, Toshiba's motion is in large part moot.  As discussed in the court's ruling on Toshiba's PML 6, *infra*, defendants will be allowed to introduce the later-identified prior art references related to the '966 patent.  Accordingly:

1) Toshiba's motion to prevent defendants from raising an anticipation defense to the '966 patent on the ground that defendants have no evidence to support the defense is DENIED;

2) Toshiba's motion to bar defendants from introducing evidence related to implied license will be DENIED WITHOUT PREJUDICE because Toshiba has not adequately developed an argument for exclusion.  Toshiba may seek to revisit this motion after defendants have made the proffer ordered by the court regarding their exhaustion/licensing defense.  *See* Order Re: Toshiba's PML 4, *supra*.

3) Finally, although it seems unlikely that defendants will seek to raise the defenses of indefiniteness and prosecution history estoppel, I will not prevent them from doing so if Toshiba is permitted to present a new claim construction at trial.

15

**PML 6: Exclude Evidence and Argument Relating to Defendant's Late-Disclosed Prior Art Re: '966 Patent (dkt. 342),**

Toshiba asks for an order barring defendants from presenting 38 pieces of prior art[3] in support of their claim that the '966 patent is invalid, on the ground that these prior art references were not disclosed in Dr. Immink's initial expert report. Although Toshiba acknowledges that the parties agreed after remand that they could supplement their contention interrogatories and expert reports to account for the Federal Circuit's ruling on the proper scope of the claims, Toshiba argues that defendants' newly-disclosed references would have been relevant even under this court's prior construction and therefore should have been disclosed at the time Dr. Immink filed his initial invalidity report on July 7, 2010.[4] In response, defendants say that many of their new prior art references were not relevant under this court's previous claim construction, and in any event a) the parties agreed to allow supplementation; and b) Toshiba was not prejudiced because the new art was disclosed in these remand proceedings in a timely fashion.

This court is loathe to allow a party a mulligan based on that party's claim of a post-remand change in circumstances that is more manufactured than real, and it appears defendants may be seeking to do this with at least some of their prior art references. Even so, in this case there are pragmatic considerations that militate against granting the motion: 1) Toshiba had to expect that some new prior art would be forthcoming, as evidenced by their agreement; 2) the "new" prior art was disclosed in accordance with the timetable set by the parties, which allowed

---

[3] Defendants say they will present fewer than 10 of these references at trial. Dkt. 366, at 17.

[4] Toshiba's motion is a reprise of a motion to strike filed on October 9, 2012. This court denied the motion at a telephonic hearing on October 17, 2012. Unbeknownst to the court at that time, its recording equipment was not working, so a transcript of that hearing is not available.

sufficient time for analysis by Toshiba; 3) evaluating whether each piece of prior art could or should have been disclosed earlier under the court's previous claim construction would require a separate and additional inquiry not capable of easy resolution; and 4) any prejudice that Toshiba faced—having to address the art references—has already occurred as a result of this court's prior order denying the motion to strike.  Under these circumstances, and absent sufficient evidence from which to find that defendants failure to disclose the prior art reference in the prior proceeding was willful or in bad faith, I am satisfied that defendants are not barred from relying on the new prior art references at trial.  *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (identifying factors court must consider in deciding whether Rule 26(a) violation was either justified or harmless).

**PML 7: Exclude Evidence or Argument Related to the Court's Summary Judgment Order or the Federal Circuit's June 11, 2012 Order (dkt. 343),**

Defendants generally agree that "much of the summary judgment order and Federal Circuit decision do not need to be discussed in the presence of the jury," *see also* Defendants' DML 4, *infra*, but they nonetheless contend that the court should allow the evidence for certain purposes.

First, defendants argue that the Federal Circuit's opinion and order should be used to form the basis of an instruction to the jury that it is the law of the case that 1) the DVD standards do not require discs to be finalized; 2) not finalizing the disc is a substantial use; and 3) unfinalized discs do not infringe the '751 patent.  As set forth in the discussion of Defendants' DML 3, I agree that defendants' first and third points represent the law of the case, but not their second point.  In any event, I decline to rule on this issue at this time because Toshiba's motion relates

to the use of the court decisions as evidence or argument in front of the jury, not the jury instructions. The need for instructions on these points and what the instructions should say are issues that we can address preliminarily at the final pretrial conference and more specifically at the jury instruction conference at the close of all the evidence.

Second, defendants assert they intend to use this court's summary judgment ruling to show that they lacked intent to induce infringement and that any such infringement was not willful. Although I agree with defendants that such evidence is relevant, I find that its relevance is substantially outweighed by the danger that the jury would give undue weight to the rulings of this court and would be confused by the competing explanations of the weight and relevance the jury should accord to this court's vacated non-infringement holdings (and the dissent on appeal). That said, defendants are free to refer to these matters to the extent they become relevant to any motions made outside the jury's presence.

**PML 8:  Preclude Evidence of Toshiba's Settlement Offer and Potential Settlement Offers to License its Recordable DVD Discs (dkt. 345)**

Toshiba seeks an order precluding defendants from introducing evidence of what Toshiba describes as "Toshiba's settlement offer, and potential settlement offers, to license its recordable DVD discs at $0.003 per disc."  (Pl.'s MIL No. 8 (dkt. 345) 1.)  The court agrees with Toshiba that any reference to a settlement offer is prohibited pursuant to Federal Rule of Evidence 408, and therefore the court will grant in part Toshiba's motion.  The motion, however, raises a more fundamental issue, namely, whether the 0.3 cents per disc rate, on which defendants' expert Richard Bero relies in reaching his opinion about a reasonable royalty, represents an established rate, independent of the settlement offer made here.

18

In opposition to the motion, defendants contend that the 0.3 cents per recordable disc is Toshiba's standard, industry-wide fair, reasonable, and non-discriminatory ("FRAND") offer. (Defs.' Opp., dkt. 368, at 1).   Defendants further argue that the fact that Toshiba offered defendants this rate as part of a settlement offer does not per se render this rate off-limits pursuant to Rule 408 because this rate is independently–and highly–relevant to a reasonable royalty analysis.[5]   In support of their position, defendants rely on a 30(b)(6) deposition of Toshiba, from November 1, 2010, at which Masatsugu Mukuge, Toshiba's Chief Specialist in the Licensing & Contract Group, Intellectual Property Division, Digital Products & Services Company testified on behalf of Toshiba:

> Q.  When Toshiba has individually licensed its patents, does it have a set royalty rate.
>
> A.  Yes, it does.
>
> . . .
>
> Q.  What is the rate for recordable discs?
>
> A.  Please, hold on.  I can't remember at this moment.
>
> Q.  Is that something you could confer with someone during the lunchtime and get back to us?
>
> A.  Yes.
>
>  . . . [after lunch break]
>
> Q.  Is there a fixed rate that Toshiba asks licensees to pay when it licenses individually its DVD patents?
>
> . . .

---

[5] *So* relevant, that defendants have moved *in limine* to strike the testimony of Toshiba's expert John Jarosz because of his failure to consider this rate in offering his opinion about the appropriate reasonable royalty.  The court addresses this issue below.

      A.  Yes, there is.

      Q.  What is that rate?

      A.  It is 0.3 cents.

(30(b)(6) Toshiba Depo. (Mukuge, 11/1/10) (dkt. 246) at 47, 50.)

Despite this pellucid testimony, Toshiba still insists that the 0.3 cents rate was a settlement offer to defendants.  In support of the motion, Mukuge has submitted a declaration, in which he avers that "[d]uring the settlement negotiations with Defendants, Toshiba offered a range of rates depending on the scope of any license agreement in the settlement offer of 0.3 cents," and that "Toshiba has not made the offer of 0.3 cents to anyone other than the defendants in the instant litigation and no license agreement has been concluded with anyone at that rate."  (Declaration of Masatsugu Mukuge ("Mukuge Decl.") (dkt. #348) ¶¶ 6-7.)  The problem for Toshiba, however, is that there is absolutely no indication in Mukuge's trial testimony as Toshiba's chosen representative, that the 0.3 cents rate he reported was a settlement offer, or more importantly, that this rate was solely fashioned for settlement purposes.

After the exchange quoted above, Mukuge did acknowledge that "there hasn't been a license yet" at that rate.  (30(b)(6) Toshiba Depo. (Mukuge, 11/1/10) (dkt. 246) at 51.)  But, when later pressed for additional clarity, Mukuge testified:

> Q.  Just so we're clear, Mr. Mukuge, in your last answer it was translated "We are prepared to offer the rate and the conditions under which the license could be given."  Is the rate the 3 cent per disc rate that we discussed yesterday?
>
> A.  If a potential licensee asked about the rate for recordable discs, then we will provide the answer that the rate is 0.3 cents.

(30(b)(6) Toshiba Depo. (Mukuge, 11/2/10) (dkt. 247) at 102.

While the court has no reason to doubt Mukuge's representation that the 0.3 cents per DVD rate has not been offered or accepted to date, Mukuge clearly states that if Toshiba individually licensed its patents, then it would charge 0.3 cents per recordable DVD.  The fact that there have been no takers at this rate does not render his testimony speculative nor does it undercut the conclusion that this rate is Toshiba's established royalty for a package of patents, including the two patents-in-suit.  Nor does the fact that Toshiba independently offered the 0.3 cents per disc rate to defendants as part of settlement discussions (*see* Declaration of Karl J. Kramer (dkt. 351) ¶ 4; *id.*, Ex. 2 (dkt. 351-2) 3) bar defendant's use of Mukuge's testimony at trial to establish Toshiba's royalty rate.

Accordingly, this motion is GRANTED IN PART and DENIED IN PART.  The court will not exclude Mukuge's testimony of a 0.3 cents per DVD rate from trial and it will allow defendants' expert to rely on this rate in his damages testimony.  *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (describing the first factor to be considered as "[t]he royalties received by the patentee for the licensing of the patent in suit, providing or tending to prove an established royalty.").  Defendants, however, are precluded from introducing evidence or otherwise mentioning that this rate also reflects a settlement offer made by Toshiba to defendants.  Given the court's ruling below on Toshiba's damages expert, this is not likely to be an issue for defendants.

**PML 9: Exclude Testimony of Richard F. Bero (dkt. 352)**

In this motion, Toshiba seeks to exclude under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the testimony of defendants' damages expert Richard F. Bero because of

his use of "numeric proportionality," arguing that this method is an "overly-simplistic, arbitrary formula that has been rejected by his peers and that Mr. Bero admits neither he, nor any other damages expert that he is aware of, has ever testified to in court." (Pl.'s MIL No. 9 (dkt. #352) 1.) In support of its position that "courts have flatly rejected the concept of numeric proportionality," Toshiba cites a single district court case in which the court rejected an expert's reasonable royalty analysis because he "did not adequately apportion the straight licenses. [The expert] simply divided their rates by the number of patents that the licenses covered." *ResQNet.com. Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 694-95 (S.D.N.Y. 2011) (also describing the expert's method as a "straight up division method").

If Bero had simply divided the royalty rate by the number of patents to determine the specific rates for the patents-in-suit, then the court would agree with Toshiba that this methodology was not sufficiently rigorous to meet the requirements of *Daubert* and Federal Rule of Evidence 702. But, Bero did not simply employ a "straight up division method" like the expert in *ResQNet.com* and call it a day.[6] Rather, as detailed in his report, and as summarized in defendants' opposition brief to this motion *in limine*, Bero then considered the *Georgia-Pacific* factors to determine the specific value of the patents-in-suit and assigned each a unique royalty rate -- 0.025% for the '751 patent and 0.05% for the '961 patent. (*See* Defs.' Opp. (dkt. 369) 7-12 (citing Bero Report (dkt. 107) 38-46).)

---

[6]Nor is Bero's methodology subject to the criticism of economists in the academic articles cited by Toshiba. (*See* PML No. 9 (dkt. 352) 4 & nn.1, 2 (describing economists' critique of numeric proportionality as "wrongly assum[ing] that all patents in a portfolio have equal value").)

Any concerns raised by Toshiba go to the weight of Bero's testimony.  I  no basis to preclude this testimony under *Daubert* or Rule 702.  Accordingly, the court will deny Toshiba's motion *in limine* no. 9.

**DEFENDANTS' MOTIONS**

**DML 1: Preclude Late-Disclosed and Undisclosed Opinions from Toshiba's Liability Expert, Dr. Hesselink (dkt. 339);** Pl's response, dkt. 370)

Defendants ask for an order barring Dr. Hesselink from testifying about his analysis of 10 multi-session, unfinalized discs that defendants' expert, Dr. Mansuripur, tested and disclosed in 2010.  (This evidence was not before the court during the summary judgment proceeding.)  In a supplemental report dated December 31, 2012, Dr. Hesselink opined that even though not finalized or recorded in Disc-at-Once mode, such discs nonetheless infringe the '751 patent because they contain either a Closure Zone or Border-Out that performs the same functions as the claimed lead-out area.  Dkt. 355-4.  Defendants contend that this opinion should be barred as untimely supplementation of Dr. Hesselink's opening expert report.  As defendants point out, during the summary judgment proceeding, this court rejected an attempt by Dr. Hesselink to assert this same theory, based on other unfinalized discs, on the ground that it was not disclosed in his initial report.  Op. and Order, dkt. 277, at 3-4 (refusing to consider Hesselink's new doctrine of equivalents theories regarding unfinalized discs as "far beyond the scope of his original expert report").

In response, Toshiba does not contend or suggest that the parties agreed after remand to allow Toshiba to expand the scope of its original infringement contentions to include new theories not contained in Dr. Hesselink's initial report.  Instead, it argues that Dr. Hesselink's

23

new opinions regarding the multi-session discs recorded by Dr. Mansuripur are a fair rebuttal to the following statement offered by Dr. Mansuripur in paragraph 51 of *his* supplemental report, dated December 7, 2012:

> The lack of finalization (and lack of the claimed test pattern and claimed lead-out area) does not prevent these accused discs from being recorded in one drive and reproduced by other drives.

According to Toshiba, it is only fair to allow Dr. Hesselink to refute Dr. Mansuripur's statement that the unfinalized discs he tested do not contain the claimed test pattern and lead-out area.

Toshiba's argument sets up a straw man. As Toshiba is aware, Dr. Mansuripur did *not* test the multi-session discs for the presence of the test pattern or lead-out area. As he explained at his deposition, dkt. 333 at 434-37, the purpose of his tests was to challenge Dr. Hesselink's assertion, made in his August 30, 2010 supplemental expert report, that it was necessary to finalize or record discs in disc-at-once mode in order for the discs to have broad interchangeability among disc drives. *See* Hesselink Supp. Report, Aug. 30, 2010, dkt. 172, at ¶72 ("An unfinalized (or non-DAO recorded) disc cannot be played in conventional DVD drive (or any DVD drive or video recorder other than the DVD drive in which it was recorded if the disc was recorded in the manner described by Dr. Mansuripur)."). Dr. Mansuripur further explained that the statement included parenthetically in his supplemental report (that the unfinalized, multi-session discs lacked the claimed test pattern and claimed lead-out area), was not the result of any testing but "based on my understanding of the standards and based on what I had read in Dr. Hesselink's reports." In other words, Dr. Mansuripur was merely *assuming* the absence of the test pattern and lead out area based on *Toshiba's* theory of infringement, to wit, that the necessary test pattern and

lead-out area were written on defendants' DVD+R and DVD-R discs only when the discs were finalized (or written in disc-at-once mode).

So understood, it is plain that Toshiba is not really offering Dr. Hesselink's testing of the discs to challenge Dr. Mansuripur's opinion regarding cross-compatibility, but actually is attempting to resurrect its doctrine-of-equivalents theory based on unfinalized/multi-session discs. This attempt is D.O.A.  Clearly, Dr. Hesselink had the means long before he filed his original expert report to discover whether end use of defendants' discs using multi-session operation also lead to the presence of the requisite test pattern and lead-out areas and infringe the asserted claims of the '751, whether literally or by equivalence.  He did not take that approach, arguing instead, among other things, that finalizing DVDs or recording them in disc-at-once mode are the normal and expected uses of the products because otherwise they would not be cross-compatible with DVD drives or recorders other than the drive in which they were recorded.  As discussed in more detail with respect to Defendants' DML 3, there is nothing "manifestly unjust" in requiring Toshiba to stick to its original contentions, even though it now may question whether those contentions were well-founded.  Accordingly,

1) Defendants' motion to preclude Dr. Hesselink from testifying regarding the findings in his December 31, 2013 supplemental report is GRANTED; and

2) Toshiba's request that Dr. Mansuripur be precluded from offering any testimony that implies or suggests that multi-session recorded discs do not infringe is DENIED.

**DML 2: Exclude Testimony and Argument Based on Incorrect Claim Construction Related to '751 and '966 Patents (Dkt. 341)**

Defendants have asked the court to resolve certain claims construction issues that have arisen as a result of opinions offered by Dr. Hesselink, Toshiba's expert witness.  (Toshiba argues that it is unnecessary to decide this issue if the court grants Toshiba's PML 6, in which it asks the court to strike numerous prior art references disclosed by defendants after remand that it says should have been disclosed in the initial proceedings.  As discussed above, I have denied that motion; perforce, I must decide this one.)  With respect to the '966 patent, Defendants contend that Hesselink is attempting to distinguish four anticipatory references related to floppy discs by improperly reading limitations into Claim 1 that effectively would limit that claim to optical media.  In paragraph 22 of his December 7, 2012 invalidity report, Hesselink recites the Federal Circuit ruling that the two identifiers relating to recording planes are structural limitations, then affirmatively states that "[t]he plain import of this statement is that these structures are embedded into the medium itself."  Dkt. 355, Exh. 7 at 7.  Toshiba argues that the Federal Circuit's use of the term "structural limitations," along with statements in the specification about the management information being important for system operation, reflect a requirement that the management information must be permanent.  Toshiba argues that even if the information simply represents physical aspects of the disc, to do so accurately, the management region, practically speaking, needs to be recorded as a physical structure of the disc.  *See* dkt. 371 at 3.

As defendants point out, determining whether Claim 1 requires the identifying information to be embedded into the recording medium is a matter of claims construction that is solely within the purview of the court.  For the reasons set forth in defendants' motion, I agree that nothing in the Federal Circuit opinion, the claim language or specification requires the

identifiers to be embedded permanently into the disc.  The Federal Circuit held only that the information *represent* a physical aspect of the disc, not that it be a permanent physical *part* of the disc.

The claim language is similarly silent with respect to whether the identifying information is embedded in or a permanent part of the disc.  It merely discloses:

A recording medium comprising:

at least one recording plane, wherein each recording plane on which data is recorded includes:
>  . . .

>> a management region including number-of-recording-planes identifying information that represents the number of recording planes of the recording medium and recording-plane identifying information that uniquely identifies that recording plane.

Finally, it is simply too much of a leap to infer from the statements in the specification about the importance of the management information that the information must be permanently embedded in the medium.

I further agree that any attempt by Hesselink to limit the term "recording medium" to optical media is inappropriate.  Although Toshiba is correct that the court did not formally construe the term "recording medium" in its claims construction order, I found that Claim 1 of the '966 patent is not limited to optical media:

> The patent specification states that "[t]he present invention relates to a recording medium, such as an optical disc . . .," '966 patent, 1:9-10 (emphasis added), and throughout the "Summary of the Invention," the inventors repeatedly use the term "recording medium" rather than "optical disc."  The words "such as" indicate that the present invention could be applied to recording mediums that are not optical discs. Although the figures in the specification depict an optical disc, the specification states that it is depicting only "an embodiment" of the invention.

27

Claims Construction Ord., dkt. 98 at 36.

In sum, although I will not prevent Toshiba from arguing that the asserted magnetic media prior art references do not contain a management region as required by Claim 1 of the '966 patent, I will not allow Toshiba or its expert to argue that the claim language requires the "management region" to be recorded as a permanent physical structure of the disc or to limit the term "recording medium" to optical discs.

Also with respect to the '966 patent, defendants seek to prevent Toshiba from arguing that Claim 1 excludes pre-recorded recording media. In response, Toshiba states that defendants' request is irrelevant because "only recordable discs are at issue." Dkt. 371 at 8. Accordingly, this aspect of defendants' motion is denied as moot.

Finally, defendants assert that Dr. Hesselink neglects to analyze where the "lead-out area" is specifically located on the disc. According to defendants, Claim 1 of the '751 patent requires the lead-out area to be located not only outside the "data area" but also in the outer perimeter or edge of the disc. Toshiba argues that  nothing in the claim language or the specification requires that the lead-out area be located in an absolute location on the disc, only that it is located outside the data area. I agree with Toshiba that the location of the lead-out area is relative to that of the lead-in area and the data area.

Claim 1 of the '751 patent discloses:

> An optical disc comprising:
>
> > a lead-in area defined in an inner peripheral region of the optical disk;
> >
> > a lead-out area defined in an outer peripheral region of the optical disk, and

28

> a data area which is defined between said lead-in
> area and said lead-out area . . .

Although the claim uses the term "peripheral," which, as defendants point out, can refer to the perimeter of a circle,[7] the claim refers to both an inner peripheral region and an outer peripheral region, indicating a general area as opposed to a specific area. The claim's use of the indefinite article "an" versus a definite article "the" further supports the construction that the lead-out area has a relative position outside the data area and is not absolutely located on the outermost perimeter of the disc. Although defendants refer to Figure 3 in the specification, which shows the lead-out area on the outermost perimeter of the disc, this figure is merely one embodiment of the claim and cannot be read as limiting the otherwise general claim language.

Accordingly:

1) Defendants' motion is GRANTED to the extent that the court construes Claim 1 of the '966 patent as not (a) requiring that the "number-of-recording-planes identifying information" and "recording-plane identifying information" be permanent or embedded into the recording medium or (b) limiting the term "recording medium" to optical discs.

2) Defendants' motion that the court construe Claim 1 of the '966 patent as not being limited to pre-recorded recording mediums is DENIED as moot.

3) Defendants' motion to construe Claim 1 of the '751 patent as requiring the lead-out area always to be located in the outer perimeter or edge of the disc is DENIED.

---

[7] Defendants cite the Merriam-Webster dictionary, which defines "peripheral" as "of, relating to, involving, or forming a periphery or surface part" and defines "periphery" as "the perimeter of a circle or other closed curve." *See* dkt. 341 at 12.

**DML 3: Exclude Evidence or Argument Inconsistent with the Federal Circuit's Affirmance that Unfinalized Discs are Substantial Noninfringing Uses Under the '751 Patent (dkt. 344)**

Toshiba does not object to this motion in principle, but disagrees with defendants' characterization of precisely what constitutes "fair game" for trial regarding the '751 patent in light of the Federal Circuit's decision and order remanding this case, *Toshiba v. Imation Corp.* 681 F.3d 1358.   Not surprisingly, defendants argue that little remains in play, while Toshiba advocates  a broader playing field.  Having considered both sides' positions, I conclude that both are overreaching.   Rather than rule on each of the general "examples" set out in defendants' motion at p. 1, I will set out the court's view as to where the boundaries lie.  I trust and expect the parties to stay in bounds at trial, in which case many of the issues on defendants' list will resolve themselves.

A.  <u>General Ground Rules Concerning Indirect Infringement of '751 Patent</u>

1.  **Toshiba's theory of contributory infringement is out.**

Toshiba does not dispute this.

2.  **Toshiba may proceed with its theory of induced infringement based on discs that are either finalized or recorded in "disc-at-once" mode, but may not present evidence or argue that unfinalized or multi-session discs infringe.**

Toshiba's response to this and other motions indicate that it wishes to present evidence at trial showing that even the act of recording DVDs without finalizing them (*i.e.* in multi-session mode), is an infringing use.   Defendants insist that this argument has been foreclosed by the Federal Circuit's decision that Toshiba had failed to adduce evidence sufficient to create a

genuine issue of material fact as to whether using unfinalized DVDs was not a substantial non-infringing use. In response, Toshiba points out that the appellate court made that finding in the context of its *contributory* infringement claim, not its *induced* infringement claim; therefore, it argues, it remains free to show that even unfinalized DVDs infringe the '751 patent for purposes of proving its induced infringement claim.

Although Toshiba is correct that it may present facts supporting its induced infringement claim at trial, it is wrong that it may pursue any theory of induced infringement as it sees fit, including theories that it did not previously raise in this court or on appeal. During the summary judgment proceeding, Toshiba took the position that "Use of 'Finalization' or 'Disc-at-Once' Operations on Defendants' Recordable DVD Discs in the U.S. Directly Infringes the '751 Patent." Toshiba's PPFOF in Supp. of Mot. for S.J., dkt. 119, Sec. IV. *See also* Toshiba's Br. in Supp. of Mot. for S. J., dkt. 118, at 20 ("Prof. Lambertus Hesselink also was able to devise testing protocols to determine direct infringement of the '751 patent through end use of Defendants' DVD discs when that end use involves writing data to the discs with an accompanying 'finalization' or 'Disc-At-Once' ('DAO') operation."); Supp. Dec. of Lambertus Hesselink, dkt. 190, ¶8 ("The 'intended purpose' and 'normal usage' to which I referred in my opening report are understood by one of ordinary skill in the art to include discs that are finalized or recorded "disc-at-once."). Although neither Toshiba nor its expert, Dr. Hesselink, may have directly and affirmatively stated that other end uses, *i.e.* multi-session, unfinalized DVDs, do *not* infringe, they conceded it by implication, and it is ridiculous for Toshiba to contend otherwise. In fact, this court found it to be undisputed that "DVD Recorders do not write a lead-out area [an element necessary for infringement] unless and until a DVD-R, -RW or +R disc is finalized or Disc-at-

Once recording is performed."  Op. and Order, dkt. 277, at 14.  Toshiba's position for both contributory and induced infringement was that even though unfinalized discs did not infringe, the use of defendants' discs in this manner was not "substantial" because finalizing or using disc-at-once mode were the normal and intended uses of the accused discs, and defendants were encouraging end users to either finalize their discs or record in disc-at-once mode.

Admittedly, Toshiba did make a late attempt to introduce, through its expert, Dr. Hesselink, test results that showed that even multi-session, unfinalized DVDs contained the requisite lead-out area under a doctrine of equivalents theory.  This court refused to consider the evidence, however, finding that Dr. Hesselink's new testing and doctrine of equivalents theory were untimely and far beyond the scope of his original expert report.  Op. and Order, Dec. 28, 2010, dkt. 277, at 3-4.  Although Toshiba and its expert insisted that this supplementation was proper because they had "reserved the right" to add a doctrine of equivalents theory later, this court was unmoved.  *Id*. at 4 ("[Toshiba and Dr. Hesselink] may as well have reserved the right to suspend the law of gravity.").

Although this court does not have a copy of the parties' appellate briefs, it appears Toshiba gave up this battle on appeal, insofar as the Federal Circuit wrote that "Toshiba does not dispute that unfinalized DVDs do not infringe the '751 patent." *Toshiba*, 681 F.3d at 1362.  The appellate court's discussion of Toshiba's infringement claims with respect to the '751 was limited to the one originally advanced, namely, that defendants' accused DVDs infringe the '751 patent when used in one of two ways:  to record or write data in disc-at-once mode or when "finalized" after recording either a single session or multiple sessions.

The upshot is that whether based on principles of the law of the case doctrine or waiver, Toshiba may not pursue a claim of indirect infringement against defendants based on a theory that even multi-session, unfinalized DVDs infringe the '751 patent. Toshiba had the motive and the means long before filing this lawsuit to have tested defendants' accused products and developed an infringement theory on this basis, but it did not do so. Evidence showing that even unfinalized DVDs infringe would have been just as relevant to the induced infringement theory as to its failed theory of contributory infringement, but Toshiba did not adduce such evidence until it was too late. The fact that it survived summary judgment on its induced infringement claim does not operate to undo its waiver. *See United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001) ("[P]arties cannot use the accident of remand as an opportunity to reopen waived issues."); *Door Systems, Inc. v. Pro–Line Door Systems, Inc.*, 83 F.3d 169, 173–74 (7th Cir.1996) (on remand a party can advance arguments not pursued on appeal, provided they have not been previously waived in the district court); *Schering Corp. v. Illinois Antibiotics Co.*, 89 F. 3d 357, 358 (7th Cir.1996) ("Under the doctrine of the law of the case, a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case.").

### 3. Toshiba is precluded from arguing or presenting evidence showing that defendants' accused discs necessarily infringe.

As a corollary to Ground Rule 2, Toshiba may not argue or present evidence suggesting that defendants' accused products "necessarily infringe." "An accused device will necessarily infringe, permitting a finding of direct infringement by a class of customers and an inference that the inducer intended the infringement, if the 'customers can only use the [defendant's] products

in an infringing way.'" *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 697 F.3d 387, 416 (6th Cir. 2012) (quoting *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1293 (Fed. Cir. 2008)).  Where, as in this case, an accused device "could be used in either an infringing or a non-infringing way, a claim of direct infringement based on necessary infringement fails and cannot sustain an inducement claim." *Id*. (citing *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313–14 (Fed. Cir. 2007)).

As is implicit in the Federal Circuit's opinion, the only route available to Toshiba for establishing the necessary element of direct infringement is to adduce evidence from which a jury could conclude "at least one person directly infringed an asserted claim during the relevant time period." *Toshiba*, 681 F.3d at 1364.  *See Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991) (once an "appellate court expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case."); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("the scope of the remand is determined not by formula, but by inference from the opinion as a whole.").

### 4. Toshiba does not need to present "specific instances of direct infringement" to support its inducement claim, but may establish its claim through circumstantial evidence.

Although Toshiba is precluded from arguing that defendants' discs "necessarily" infringe or that unfinalized DVDs infringe, it is clear from the Federal Circuit's opinion that Toshiba is free to present any facts or opinions from which a jury could conclude that at least one person finalized or recorded a DVD using disc-at-once mode during the relevant time period.  This includes evidence that:

34

> Appellees designed their DVDs to comply with the DVD standards, instructed users to use them in an infringing manner, and some recommended against using the DVDs in a non-infringing manner. Appellees also advertised their DVDs as compliant with the industry standards. To satisfy the purpose of the standards (compatibility), the DVDs must be finalized or written using the disc-at-once mode.

*Toshiba*, 681 F.3d at 1366.

None of this evidence is inconsistent with the appellate court's finding, in the context of the contributory infringement claim, that Toshiba had failed to come forward with evidence to show that the use of unfinalized DVDs was not substantial.  Simply because a substantial number of DVD users may choose not to finalize does not establish that *none* of them do.  Stated another way, the focus for the inducement claim is not on whether discs *must* be or are *always* finalized, but on whether defendants *encouraged* end users to finalize (or use disc-at-once mode).  To this end, Toshiba is free to rely on the DVD specifications, defendants' advertising and defendants' instructions to its users to meet its burden of proving the minimum one instance of direct infringement and the specific intent necessary to its induced infringement claim.

   5. **Toshiba is precluded from arguing that unfinalized DVDs are an infringing use or that *all* of defendants' accused products necessarily infringe, but it is not precluded from presenting evidence to show that the use of unfinalized DVDs is not substantial.**

The Federal Circuit's finding that Toshiba had failed to meet its burden of showing that the use of unfinalized discs was not substantial is not the equivalent of a finding that using unfinalized DVDs is a "substantial use."  As Toshiba argues persuasively in its brief, the question before the Federal Circuit on the contributory inducement claim was not whether defendants had proved that the use of unfinalized discs *was* substantial, but whether Toshiba had proved that the

use was *not* substantial.  As Toshiba points out, although it did not adduce evidence showing the volume of infringing versus non-infringing use, neither did defendants.  Accordingly, there is no basis to find, as the law of the case, that the use of unfinalized DVDs is a "substantial" non-infringing use.  As I read the appellate court's opinion,  Toshiba is free to present in support of its *induced* infringement claim any evidence that it may have indicating that the use of unfinalized DVDs is not substantial, including surveys, expert, or other evidence showing how frequently users choose not to finalize DVDs, even though its failure earlier to produce such evidence was and remains fatal to any claim of contributory infringement.

That said, it is plain that, at least for liability purposes, Toshiba does not *need* to prove that use of unfinalized discs is not substantial in order to succeed on its induced infringement claim.  This court's conclusion to the contrary was reversed on appeal.  As the Federal Circuit explained, even absent evidence that the accused products "necessarily" infringed the asserted claims of the '751 patent, Toshiba's induced infringement claim survived because Toshiba had adduced sufficient evidence such that a jury could "'reasonably conclude[] that, sometime during the relevant period...more likely than not one person somewhere in the United States' finalized DVDs or used the disc-at-once mode." *Toshiba*, 681 F.3d at 1366 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009)).  Specifically, the court found it sufficient that Toshiba had adduced facts showing that defendants had "designed the DVDs to be used in an infringing way and instructed users to use them in the infringing way by finalizing the DVDs or using the disc-at-once mode." *Id*. at 1365.

Perhaps a lack of evidence regarding the proportion of defendants' customers who use the discs in an infringing way versus those who use them in a non-infringing way will factor into any

jury decision on damages, but it is not fatal to Toshiba's efforts to establish defendants' liability for induced infringement.

> **6. Toshiba may argue and present evidence that finalization is necessary to satisfy the *purpose* of the DVD standards (compatibility), but it may not argue that the standards themselves require finalization.**

The Federal Circuit explicitly rejected Toshiba's claim that finalization was required by the DVD standards. *Toshiba*, 681 F.3d at 1363 (rejecting claim that DVD standards required finalization, noting that DVD standards recognize that users may record to DVDs without finalization). Accordingly, the doctrine of issue preclusion bars Toshiba from relitigating this issue. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (issue preclusion doctrine "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim.") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). The finding that the DVD standards did not require finalization was essential to the Federal Circuit's conclusion that Toshiba had failed to proffer evidence creating a genuine issue of fact as to whether the use of unfinalized DVDs was not substantial.

### B. Motion Related to use of "Disc-at-Once" Terminology in Nero Software

The last issue in this section is a somewhat-unrelated evidentiary concern raised by defendants in their motion. Defendants request that Toshiba be precluded from offering argument or evidence suggesting that "disc-at-once" mode, as used in the Nero software, has the same meaning that it has in the DVD specifications, where "disc-at-once" refers to a mode of

recording that results in a finalized disc.  Defendants are concerned that Toshiba may try to mislead the jury into finding infringement through the use of the Nero software by conflating the "disc-at-once" terminology associated with Nero (the most widely-used DVD burning software) with the "disc-at-once" terminology associated with the DVD standard.

Toshiba responds that it intends to do no such thing.  Although it admits that it does intend to argue that discs recorded in "disc-at-once" mode include the test pattern and lead-out area required by the asserted claim, it says it will establish this through Dr. Hesselink's test results, not by attempting to link the term "disc-at-once" to the DVD specifications.  Further, responds Toshiba, in the event a witness would offer testimony that appears to conflate the terms, defendants can address any misunderstanding through cross-examination.

Toshiba has the more persuasive argument on this point.  Although I understand defendants' concern, it appears more hypothetical than real, and in any event it is better left to cross-examination than a motion *in limine*.  Accordingly, this aspect of defendants' motion is DENIED.

The remainder of defendants' motion to exclude evidence or argument inconsistent with the Federal Circuit's affirmance that unfinalized discs are substantial noninfringing uses under the '751 patent is GRANTED, in principle, and as clarified by the ground rules set forth above.


**DML 4: Exclude Evidence or Argument that the Federal Circuit Vacated Summary Judgment or Found Certain Facts When Vacating Summary Judgment (dkt. 346)**

Defendants' motion seeks to preclude Toshiba from attempting to introduce as evidence or making arguments to the jury about the Federal Circuit's June 11, 2012 order.  Toshiba does

not oppose this motion as framed, but argues that it should apply to both sides.  I agree.

Accordingly, it is GRANTED, with the advisement that it applies to both sides in this lawsuit.


**DML 5: Exclude Evidence or Argument Concerning Willful Infringement (dkt. 347)**

Toshiba intends to pursue at trial its claim that defendants' infringement was willful.  To establish willful infringement, Toshiba must show, by clear and convincing evidence, that 1) defendants acted "despite an objectively high likelihood that [their] actions constituted infringement of a valid patent"; and 2) "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to [defendants]." *In re Seagate Technology, LLC,* 497 F.3d 1360, 137 1 (Fed. Cir. 2007) (en banc).  In *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1006-08 (Fed. Cir. 2012), the Court of Appeals for the Federal Circuit clarified that, even though the jury may be asked to determine the underlying facts relevant to the alleged infringer's defense or defenses, "the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the  judge." *Id*. at 1008.

Citing *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221 (Fed. Cir. 2011), defendants argue that the determination whether the objective prong of the willfulness test is satisfied must be decided by the court before it submits the subjective prong to the jury.  *Id*. at 1236 ("Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong.").  Defendants argue that the court should decide this

question of willfulness now.  According to defendants, the fact that they won in the initial summary judgment proceeding on both patents demonstrates as a matter of law that their defenses were objectively reasonable.

Defendants make a valid point, but I am denying their motion at this time.  Neither case cited by defendants establishes that, as a matter of law, a district court's finding of non-infringement always and necessarily disproves the objective prong of the willfulness standard.  As discussed below in Defendants' DML 6, evidence of the parties' negotiations regarding licensing of the patents in suit and defendants' actions in response to communications from Toshiba or its licensing agent, DVD6C, will be relevant to the questions whether defendants knew of the '751 patent and acted with the specific intent to induce infringement.  Accordingly, allowing this case to proceed on the issue of willfulness will not result in the jury hearing evidence that otherwise would be excluded.  To the same effect, it won't be until the jury hears instructions at the end of the case that it will have a context that frames how it should consider the evidence.  Further, any potential prejudice to defendants–and I don't see any– is outweighed by the benefit of a fully-developed record.  Defendants may renew this motion at the close of the evidence, at which time the court will decide whether the record warrants submitting a willfulness instruction to the jury.

This being the case, perhaps defendants might feel as if they have been put at a disadvantage if Toshiba's in its opening statement  accuses the defendants of being "willful" infringers or otherwise allude to Toshiba's claim of willfulness.  From the court's perspective, this probably would not have any impact on the jurors apart from Toshiba's statements regarding defendants' states of mind to induce infringement.

40

But I offer this alternative for the parties' consideration: we could do a low-rent version of a trifurcated trial, in which we reserve instructions and arguments on willfulness until after the jury returns its verdicts on infringement and invalidity.  During the willfulness proceeding, the jury could be instructed to rely on the evidence submitted during the liability phase, with the lawyers for both sides allowed the opportunity to argue their respective positions (assuming the court does not rule in favor of defendants on the objective prong), after which the jury then deliberates.  The court is not necessarily advocating this approach, but merely proposing it as a matter for discussion at the pretrial conference.

In sum, defendants' motion for an order finding that Toshiba has failed to adduce evidence showing that defendants acted despite an objectively high likelihood that their actions constituted infringement of a valid patent is DENIED WITHOUT PREJUDICE, subject to renewal at the close of the evidence.

## DML 6: Exclude Evidence Prior to the Filing of the Lawsuit for Purpose of Proving Damages for the '751 and '966 Patents and for Purpose of Proving Knowledge and Intent for Induced Infringement Claim Relating to the '751 Patent (dkt. 349)

Defendants ask this court to preclude Toshiba from introducing evidence concerning defendants' alleged infringement prior to the filing of this lawsuit.  Defendants' motion rests on two grounds:  1) that Toshiba's communications (through its licensing agent) with defendants before suit were insufficient as a matter of law to satisfy Toshiba's notice obligations under 35 U.S.C. § 287(a), and therefore Toshiba may not recover pre-suit damages; and 2) that Toshiba has failed to present evidence showing that any defendant knew of the '751 patent or the claimed test pattern before this suit was filed, and therefore it cannot prove that any defendant actively

41

induced infringement prior to suit.  Toshiba responds that the questions whether defendants were notified of their infringing activity or knew of the '751 patent (and claimed test pattern) are fact questions not properly resolved on a motion *in limine*.

I agree with Toshiba.  Although I do not fault defendants for seeking to eliminate portions of Toshiba's case that they genuinely believe Toshiba cannot prove, I remain of the view the most efficient and fair use of the parties' time and resources is a relatively inclusive trial, with the parties' free to file motions after verdict to attempt to reshape the verdict(s) as they see fit. Obviously, the court does not envision a free-for-all; as is clear from this court's rulings elsewhere in this order, certain evidence already is clearly off limits and inadmissible.  Also, as is always the case, the parties and the court can readdress issues if justice so requires (which is *not* an invitation to seek reconsideration of a motion simply because the ruling was unfavorable).

On the issue of notice, I am not persuaded that admission of evidence concerning pre-suit communications between defendants and DVD6C (or Toshiba directly) is unfairly prejudicial to defendants.  Notably, although defendants argue that none of these communications establish that defendants had actual knowledge of the '751 patent or the test pattern, Toshiba intends to argue that knowledge or willful blindness can be inferred from the communications, defendants' actions in response to those communications and defendants' knowledge of the DVD specifications.  I am satisfied that Toshiba possesses sufficient evidence to create a triable issue on the question of defendants' intent to induce infringement, and that defendants' pre-suit communications with Toshiba or DVD6C regarding the patents in suit are relevant to that issue.

It follows that because I am allowing Toshiba to introduce evidence concerning pre-suit communications and negotiations between the parties and DVD6C prior to suit for the purpose

of showing defendants' actual knowledge and state of mind to induce infringement, it is unnecessary to rule now on the question whether such communications were sufficient to comply with the requirements of the marking statute.  The jury will hear this evidence in any event. Further, in the hopes of avoiding a new trial on damages in the event this court rules, post-trial, in defendants' favor on the notice question, it is better to ask the jury to consider the question of notice under 35 U.S.C. § 287(a), as proposed in defendants' jury instructions, and to account for that finding in their damages award.  (Assuming, *arguendo*, that the jury returns a damages verdict).

All this being so, I agree with defendants on two fairly substantial points:

First, Toshiba cannot recover pre-suit damages for alleged infringement by defendants based on their sale of discs manufactured as compliant with the DVD+R and DVD+RW formats.  Toshiba concedes that the various notices and proposed licenses that it provided to defendants did not identify these products as infringing or subject to any licensing requirements; indeed, as defendants point out, DVD6C did not start licensing such formats until January 2008, well after Toshiba claims it provided notice to defendants in this case.  Toshiba's argument that it was unnecessary to provide specific notice to defendants about the plus-format discs because they were "recordable discs" that were "functionally similar" to defendant's accused products that were identified in the patent lists and license agreements offered to defendants beginning in 2003 is an improper allusion to actual notice and ignores the purpose of the marking/notice statute. As the court explained in *Hoover Universal Inc. v. Graham Packaging Corp.*, 44 USPQ2d 1596, 1603 (C.D. Calif. 1997):

> While the requirement of physical marking or actual notice of
> infringement does protect innocent infringers, the particular

> infringer accused in the litigation, whether innocent or willful, is
> not the statute's concern.  Rather, the damage limit is an incentive
> to patentees to mark their products for the information of the
> public, including potential innocent infringers.

To comply with the purpose of the statute, it cannot be enough for a patent holder simply to accuse a broad category of products.  Functionally similar or not, Toshiba did not notify defendants prior to suit that its DVD+R and DVD+RW discs were infringing.

Second, I agree that Toshiba cannot be found to have complied with its notice obligations with respect to defendants AMI, Glyphics, Hotan and Khypermedia merely because it provided notice to their parent or controlling companies.  The cases cited by Toshiba for the proposition that notice to a parent corporation constitutes notice to a subsidiary are inapposite.  In *Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1439 (D. Del. 1987), the court was considering notice in the context of a claim of willful infringement, not 35 U.S.C. § 287(a).  In that context, the infringer's state of mind is relevant and therefore the patent owner only had to show that the subsidiary had actual notice of the patent.  The case did not hold that the specific notice required by § 287(a) is satisfied with respect to a wholly-owned subsidiary merely by notifying the parent corporation. To the contrary, the statute requires the patent owner to provide notice to "*the infringer.*"

Toshiba also cites *In re Elonex Phase II Power Management Litigation*, 2002 WL 433614, *3-*4 (D. Del. March 20, 2002).  There, however, the plaintiff had adduced facts from which it could be inferred that the parent corporations were authorized agents of the subsidiaries for the purpose of accepting notice of infringement.  In this case, Toshiba has failed to point to such facts or develop an agency theory.  The mere facts that (1) the subsidiaries were wholly-owned by the parent corporations contacted by DVD6C and (2) the license proposed by DVD6C stated that

it would apply to "Licensee and its affiliates" are not sufficient to show that the parent corporations were authorized by the subsidiaries to receive notices of infringement on behalf of the subsidiaries.   Accordingly, unless Toshiba has additional facts that would support this inference, it may not recover pre-suit damages against AMI, Glyphics, Hotan and Khypermedia.

For the sake of completeness, I note that I am not persuaded by defendants' contention that in no case may Toshiba recover pre-suit damages for any discs other than DVD-RAM format discs.  Defendants rest their contention on a report prepared by an expert hired by Toshiba who found that the '751 patent was not "essential" to disc formats other than DVD-RAM.  From this, defendants argue that, because Toshiba did not even think the '751 was "essential" to any accused products other than DVD-RAM discs, then any notice by Toshiba that accused *other* products of infringing the '751 patent was ineffective as a matter of law.

Although at first glance defendants' argument has some curb appeal, their citations do not support their contention that whether the patent holder has a good faith or honest basis for its belief is relevant to the notice inquiry.  Perhaps this is for the obvious reason that a patent holder who accuses a product of infringing without a good faith basis for doing so has bigger problems than notice, such as, Rule 11 sanctions.  Yet defendants make no suggestion that Toshiba's conduct rises to that level here.  At the same time, however, Toshiba has not denied that, at least at some point in time, it received information indicating that the '751 patent was essential only to DVD-RAM discs.   Unfortunately, Toshiba has not responded directly to defendants' contention that this information renders ineffective Toshiba's notice as to non-DVD-RAM discs

The bottom line is that I am not persuaded at this juncture that Toshiba's claim for pre-suit damages is limited to DVD-RAM discs.  Consistent with this court's goal of making a solid

45

evidentiary record, I will allow Toshiba to make its best case for pre-suit damages for the '751 patent at trial, with the exception of the two categories specified above. Defendants are free to use the information regarding "non-essentiality" as they see fit within the constraints of the rules of evidence.

In sum, defendants' motion for an order precluding Toshiba from introducing evidence prior to the filing of this lawsuit for certain purposes is GRANTED IN PART:   1) Toshiba cannot recover pre-suit damages for alleged infringement by defendants based on their sale of discs manufactured as compliant with the DVD+R and DVD+RW formats; and 2) Toshiba may not recover pre-suit damages from defendants AMI, Glyphics, Hotan and Khypermedia.  Otherwise the motion is DENIED IN THE REMAINING PART.

**DML 7: Exclude Certain Prejudicial Testimony  (Dkt. 350)**

Defendants seek to preclude Toshiba from arguing or introducing this evidence:

1. Defendants' alleged direct infringement other than allegations against Imation's internal testing.

2. The parties' nationalities or the parties' litigation conduct.

3. Toshiba's research, inventions or patents other than the patents-in-suit.

4. Whether defendants have taken licenses from the DVD6C patent pool.

5. The '651 patent.

6. The acts of one defendant as imputed acts of other defendants.

7. Attorney objections or attorney colloquy during depositions.

8. Draft expert reports, the preparation of expert reports, or communications between experts and counsel.

46

Toshiba agrees in principal to most of these requests but argues that some of the requested relief is vaguely worded and too broad.  I agree.  After considering the parties' arguments, I am granting defendants' motion with some caveats.  Although the following rulings provide the parties with the basic ground rules on a variety of topics, objections to specific references or evidence will be dealt with as they arise at trial.

### 1.  Direct infringement

Although Toshiba's only allegation of direct infringement against defendants relates to Imation and the '751 patent, evidence of direct infringement by third parties may be relevant in proving induced infringement.

### 2(a) Nationality

Necessary contextual references to geography or nationality are allowable.  Anything beyond this is excluded as irrelevant and potentially chauvinistic.

### (2)(b) Litigation conduct and communications with experts

The parties will not be permitted to discuss the following:

> Whether a motion has been granted or denied by the court;

> The existence or result of discovery disputes;

> Attorney objections; argument or colloquy during depositions;

> Whether a document has been designated confidential.

I agree with defendants that generally, an opposing party's non-designation of evidence is irrelevant.  However, the parties will be allowed to argue that the opposing party has failed to adduce or "designate" evidence to prove their claim or defense.

Defendants also ask that the court bar evidence or argument related to whether they have amended their list of prior art references during litigation.  The parties will not be allowed to argue that a piece of prior art was untimely identified because that is a matter for the court.  However, I agree with Toshiba that the facts or data provided by a party's attorney to an expert and relied on by the expert in forming his opinions in this case is admissible under Rule 26(b)(4)©.  Therefore, to the extent that Toshiba wants to introduce evidence that defense counsel identified and collected prior art references for their expert, then wrote the expert's supplemental report on those references, Toshiba may do so.

3. **Research, inventions and other patents and licenses from DVD6C patent pool**

Defendants reiterate the concern raised during a hearing prior to remand that Toshiba will attempt to introduce evidence that Toshiba is an innovator in the development of DVDs and holds numerous patents related to that technology.  They also fear that Toshiba will imply or suggest that the defendants may have infringed other patents or should have obtained licenses on the DVD6C patent pool.

Without the benefit of having the specific evidence that Toshiba intends to introduce at trial, it is difficult to declare what's fair game and what's not.  Generally speaking, however Toshiba will be allowed to present *limited* background evidence about DVD6C, its licensing activities, and Toshiba's role in formulating the DVD standard and contributing to the DVD6C pool, because these activities relate to the patents-in-suit.  This is not a blank check for Toshiba to tout its achievements or to attempt to establish itself as a leader innovator in consumer electronics; if Toshiba tries to do so, then the court will grant any objection made.

Further, communications between Toshiba, DVD6C and defendants concerning the DVD standard and the patent pool are relevant to defendants' knowledge and intent of the patents-in-suit, to the extent that these communications reference the patents-in-suit.  However, defendants' possible or alleged infringement or licensing of other patents in the DVD6C pool is presumptively irrelevant and prejudicial absent a timely 404(b) proffer to the court.

All these things being said, as always, the parties will have to raise specific objections to specific evidence at trial.

### 4. The '651 patent; attorney objections and colloquy; and imputation of one defendant's acts to other defendants

Toshiba agrees not to argue or introduce evidence related to these issues at trial with one exception.  If defendants designate deposition testimony that Toshiba believes requires attorney colloquy to provide context for the answer, then it may raise its concerns at the appropriate time and the court will address them.

## Defendants' *Daubert* Motion 1: Exclude Certain Post-Remand Opinions of Dr. Hesselink on Induced Infringement of the '751 Patents (dkt. 353)

Defendants ask the court to issue an order precluding Dr. Hesselink from testifying about:

1) the alleged direct infringement by end users;

2) whether defendants had the requisite state of mind to cause the alleged direct infringement; and

3) whether there is a nexus between defendants' actions and the alleged direct infringement.

Although framed as a *Daubert* motion, defendants' challenge to Dr. Hesselink's post-remand testimony is, in large part, a reprise of arguments raised in various other motions.

49

**A.  Testimony Concerning Direct Infringement**

Defendants say Dr. Hesselink's testimony on this point should be excluded as contrary to the law of the case.  Specifically, defendants point out that at his recent deposition, Dr. Hesselink testified that he continues to adhere to his position that all of defendants' discs infringe, notwithstanding the Federal Circuit's finding to the contrary.  *See* Dep. of Lambertus Hesselink, Dec. 14, 2012, dkt. 328, at Tr. 35: 5-11.

Having reviewed the cited portion of Dr. Hesselink's deposition, it is unclear if his testimony reflects his belief that all of defendants's discs—even those unfinalized or not recorded in DAO mode—infringe or if he was testifying that even though unfinalized DVDs may not infringe, their use is not substantial.  If the former, then I agree that it is contrary to the law of the case; if the latter, then it is not.  *See* Ground Rule #5, *supra*.  Whatever he meant, Dr. Hesselink will be required to abide by the Ground Rules at trial.  His apparent refusal to conform his testimony to the Federal Circuit's decision at his deposition, however, is not a basis for excluding him from testifying at trial.

Defendants next contend that if Dr. Hesselink cannot testify that defendants' discs necessarily infringe the asserted claims of the '751 patent, then Toshiba's claim fails because Dr. Hesselink has not offered any "relevant end user evidence to support an inducement theory based on specific instances of infringement."  Dkt. 353, at 15.  As discussed in Ground Rule 4, however, he doesn't need to.

Next, defendants argue that Dr. Hesselink should be precluded from testifying that "finalization" results in infringement because he has no evidence concerning how often the

claimed lead-out area is written on the "outer peripheral region of the disk." This argument is rejected for the reasons stated in my discussion of Defendants' DML 2, above.

Finally, defendants argue that Dr. Hesselink's opinion concerning direct infringement by end users should be excluded because he has assumed that all end users are unlicensed. As Toshiba points out, however, defendants' contention that end users are licensed flows from its patent exhaustion defense, which defendants have the burden of proving. Dr. Hesselink's failure to account for an unproven defense does not render his testimony unreliable. Further, as discussed in the context of Toshibas' PML 4, there has been no determination whether the end users are licensed.

### B.      Testimony Concerning Defendants' State of Mind to Induce Infringement

Dr. Hesselink will not be allowed to offer his opinions on the ultimate issue whether any of the defendants possessed the requisite knowledge of the patent or state of mind to induce infringement or any other matters that invade the province of the court or jury. However, as Toshiba indicates, his expertise may be relevant in presenting and summarizing the factual evidence from which knowledge of the patent and state of mind to induce can be inferred, including his knowledge of the DVD specifications, how following those specifications could or would create an infringing disc and how notice of the specifications can support an inference that a patent license is required to practice features of the standards, including the test pattern. Defendants' objection that Dr. Hesselink applied an inappropriate legal standard when he opined that a person reading the DVD specifications "should have known" of the patents in suit, and

in turn, their claimed elements, including the claimed test pattern goes to the weight of his testimony, not its admissibility.

C.    **Testimony (or lack thereof) Concerning Nexus Between Acts of Defendants and Resulting Infringement**

Finally, defendants argue that Dr. Hesselink should not be allowed to offer an opinion concerning defendants' liability for induced infringement because he has failed to establish how many end users were aware of defendants' allegedly encouraging statements and of that group, how many end users chose to finalize their disc because of such statements.  In support of its contention, defendants cite *DSU Medical Corp. v. J'S Co., Ltd.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006), wherein the court noted that when "an entity offers a product with the object of promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the *resulting* acts of infringement by third parties." (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936-937, 125 S.Ct. 2764, 2780 (2005)) (emphasis added).  Defendants offer no more than this single citation in support of their nexus argument.

Having reviewed *DSU* and other cases on induced infringement, I am not persuaded that the word "resulting" is meant to graft a direct-nexus causation requirement onto the proof necessary to show inducement.  As Toshiba points out, if it is not necessary for a patent holder to produce an actual end user who used the accused product in an infringing way, then it would follow that it is also unnecessary to present direct evidence showing an actual end user who infringed as a result of defendants' acts.  From the Federal Circuit's decision in *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1322, 1333-34 (Fed. Cir. 2009), it appears that once a plaintiff

can show circumstantial evidence of direct infringement and the necessary active inducement by the alleged infringer, the fact and scope of the resulting infringement is a damages issue. *Id*. (affirming jury finding of liability even though record was "conspicuously devoid of any data about how often consumers use the patented date-picker invention," but remanding for new trial on damages). I address this concern further in the next section on defendants' motion to exclude John Jarosz's testimony. The bottom line is that Dr. Hesselink's failure to offer any evidence of end users who finalized discs based on defendants' statements is not a basis for excluding his testimony.

## Defendants' *Daubert* Motion 2: Exclude Certain Testimony of Toshiba's Expert John Jarosz  (dkt. 354)

Defendants seek to exclude Toshiba's damages expert John Jarosz because: (1) his proposed royalty rate of 2.0% for one patent and 2.5% for two patents is unreliable; and (2) he impermissibly inflated the royalty base for the '751 patent by claiming damages for all accused discs sold by defendants, not just those that actually infringe.   I address these contentions in turn:

### Jarosz's Failure to Consider 0.3 Cents Fixed Rate

Defendants seek to exclude Jarosz's testimony because he failed to consider the 0.3 cents per recordable disc Toshiba represents it would charge to license individually its patents. The court determined in deciding Toshiba's PML 8, *supra,* that the 0.3 cents rate was not solely a settlement offer, and I have denied Toshiba's motion to preclude defendants' expert Bero from relying on it in his reasonable royalty analysis. This motion presents the flip side of the same coin, with the

defendants contending that Jarosz's failure to consider this rate in his analysis renders his opinions unhelpful to the jury or unreliable under Federal Rule of Evidence 702 and *Daubert*.

"The [reasonable] royalty may be based upon an "established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012) (quoting *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc)).  As detailed in the court's decision on Toshiba's PML 8, Toshiba, by its Chief Specialist in the Licensing & Contract Group (Masatsugu Mukuge) has stated that 0.3 cents for recordable discs, which amounts to approximately 1.7% of sale price,[8] is the "fixed rate" when Toshiba licenses individually its DVD patents.  (30(b)(6) Toshiba Depo. (Mukuge, 11/1/10) (dkt. #246) 50.)  Based on this testimony, the court finds that this rate represents the "established royalty" for the package of patents, with a question remaining as to what the specific royalty should be for the patents-in-suit.[9]  As such, Jarosz's analysis of other license agreements is not material, and therefore not helpful to the trier of fact.

---

[8] Defendants calculate this royalty rate by taking into consideration the average selling prices of the accused discs over the damages period asserted by Toshiba.  (Defs.' Mot. to Preclude, dkt. 354, at 7).

[9] In considering this matter, the court mulled whether the reasonable royalty should apply to the package of patents that plaintiff actually licenses or whether the reasonable royalty analysis should be specific to the patents-in suit.  The parties appear to agree–based on their respective experts' analyses–that any award should be for the particular patents-in-suit and not for a package of patents that might normally be part of a license arrangement.  Indeed, this approach is consistent with the Federal Circuit's treatment of damages.  *See, e.g.*, *Lucent Techs., Inc. v. Gateway*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentees' damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.").

Additionally, even if the 0.3 cents per recordable disc were not the established royalty, Jarosz's failure to consider this rate in his analysis may render it unreliable under Rule 702 and *Daubert*.  "The law is clear that the first factor of the *Georgia-Pacific* analysis, which looks at "royalties paid or received in licenses for the patent in suit," is very important.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (describing factors 1, 2 and 12 are "very important"); *see also* 7 Donald S. Chisum, *Chisum on Patents* § 20.07 ("The most influential factor is that of prior and existing licenses negotiated under the patent in suit.").  Jarosz's failure to consider the fixed rate Toshiba asserts that it would charge when it licenses individually its DVD patents would be a basis for excluding Jarosz's reasonable royalty opinions.  *See IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 691 (E.D. Tex. 2010) (rejecting expert's reasonable royalty analysis because he "should have at least inaugurated his analysis with reference to the existing licenses to the patents-in-suit.").

This portion of defendants' motion is GRANTED.  Jarosz is precluded from offering his opinion that the reasonable rate is 2.0% for one patent and 2.5% for two patents.  The rate is 0.3 cents per disc.

**Jarosz's Inclusion of All Accused Discs in Royalty Base for '751 Patent**

Defendants also challenge Jarosz's reasonably royalty analysis for the '751 patent based on him including all accused discs sold by defendants, and not just those that infringe the '751 patent, in the royalty base.  In response, Toshiba argues that in determining a reasonably royalty for indirect infringement, an expert need not "separate out alleged infringing uses from alleged

non-infringing uses." (Pl.'s Opp., dkt. 378, at 6.)  In support of this argument, Toshiba cites to *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir 2009).

In *Lucent*, the Federal Circuit vacated a jury award of a lump sum royalty in the amount of over $357 million because it was not supported by substantial evidence.  In reaching this conclusion, the court analyzed several of the *Georgia-Pacific* factors and found that Lucent as the patentee had failed to offer evidence sufficient to substantiate the jury's award.  The court's discussion of factor 11– "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use" – is material to defendants' challenge here.  *Lucent Techs.*, 580 F.3d at 1333 (citing *Georgia-Pacific*, 318 F. Supp. at 1120)).  "Factor 11 relies on evidence about how much the patented invention has been used.  Implicit in this factor is the premise that an invention used frequently is generally more valuable than a comparable invention used infrequently."  *Id.*

As in this case, the invention in *Lucent* was a feature of a product that a consumer may or may not use.  In considering the relevancy of evidence of "how often the date-picker tool in fact has been used by consumers of Microsoft products," the court first rejected Microsoft's argument that this post-infringement evidence is not relevant because it postdates the time of the hypothetical negotiation.  *Id.*  The court noted that "[u]sage (or similar) data may provide information that the parties would frequently have estimated during the negotiation."  *Id.* at 1334.

Having found this evidence relevant, the Federal Circuit, however, stopped short of embracing defendants' position here, that evidence of consumer usage is somehow required in determining the royalty base:

> [W]e have never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence. Such a strict requirement could create a hypothetical negotiation far-removed from what parties regularly do during real-world licensing negotiations.

> *Id.*

For example, "[t]he administrative cost of monitoring usage can be prohibitively expensive." *Id.* And, therefore, "potential licensors and licensees routinely agree to royalty payments regardless of whether the invention is used frequently or infrequently by the consumer." *Id.* Indeed, while the Federal Circuit was critical of many aspects of the evidence in support of the jury's lump sum royalty award, the court did not call into question the jury's reliance on evidence that defendant "sold approximately 110 million units of the three software products *capable of* practicing the methods of the asserted claims" in determining the royalty base. *Id.* at 1323 (emphasis added).

While this court will not exclude Jarosz's reasonable royalty testimony on the ground that he included in the royalty base without limit all accused discs sold by defendants, Toshiba should be mindful that "[t]he damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers." *Id.* at 1334. As the patentee, Toshiba bears the burden of providing "the extent to which the infringing method has been used supports" any jury award of reasonable royalty damages. *Id.* at 1335. With this in mind, the court will deny defendants' motion to exclude Jarosz's testimony on his inclusion of all accused discs in the royalty base for the '751 patent.

**CONCLUSION**

These rulings are intended to provide guidance to the parties prior to the final pretrial

conference on March 28, 2103.  Except to the extent the court has flagged the need for additional

input from the parties, the court does not intend to address these motions or the court's rulings

at the final pretrial conference other than in general terms, for instance, how these rulings will

affect the presentation of evidence and the length of trial.  The court will provide draft voir dire

questions and jury instructions to the parties tomorrow, March 27, 2013.


Entered this 26th day of March, 2013.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge